**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO.**

| | |
|---|---|
| TRIDENT TRUST COMPANY (SOUTH DAKOTA) INC., a citizen of South Dakota, and INVERSIONES PROVIDENCIA, LLC, a citizen of Nevis and South Dakota, <br><br> Plaintiffs, <br><br> v. <br><br> EFRAIN MARTINEZ, a citizen of Venezuela and Florida, CARLOS MARTINEZ, a citizen of Venezuela and Florida, DEUTSCHE BANK (SWITZERLAND) LTD., a citizen of Switzerland and SCHRODER & Co. BANK AG, a citizen of Switzerland, <br><br> Defendants. | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, TRIDENT TRUST COMPANY (SOUTH DAKOTA) INC. and INVERSIONES PROVIDENCIA, LLC, sue EFRAIN MARTINEZ, CARLOS MARTINEZ, DEUTSCHE BANK (SWITZERLAND) LTD., and SCHRODER & CO. BANK AG, and allege as follows:

**Summary of Action[1]**

**This action is for the recovery of in excess of $22 million which belongs to the two Plaintiffs, Trident Trust and Inversiones, at the two defendant Swiss Banks, Deutsche Bank and Schroders. Of this total, over $12 million which was held at Deutsche Bank has been wrongfully released to the two Florida Defendants, Efrain and Carlos Martinez. The release of the balance to the rightful owner, held at Schroders, is being prevented by the assertion of wrongful claims by the Florida Defendants.**

---

[1] For the Court's convenience. Requires no response.

**PARTIES**

1. Plaintiff, Trident Trust Company (South Dakota) Inc. ("Trident Trust"), is and was at all times material hereto a corporation organized under the laws of the State of South Dakota with its principal place of business in South Dakota.

2. Trident Trust sues in a representative capacity as trustee of the Amado Martinez Puentes Revocable Trust ("Amado Martinez Trust"), a trust formed under South Dakota law, on behalf of its beneficiaries, pursuant to Federal Rule of Civil Procedure 17(a)(1)(E).

3. Plaintiff, Inversiones Providencia, LLC ("Inversiones"), is and was at all material times a limited liability company organized under the laws of Nevis, with its principal place of business in South Dakota, where its sole managing member, Trident Trust, is headquartered.

4. Defendant, Efrain Martinez, is and was at all material times a citizen of Venezuela and of Florida and is ordinarily resident in Florida.

5. Defendant, Carlos Martinez, is and was at all material times a citizen of Venezuela and of Florida and is ordinarily resident in Florida.

6. Defendants, Carlos and Efrain Martinez, are sometimes referred to together as "the Martinez Defendants."

7. Defendant, Deutsche Bank (Switzerland) Ltd., a/k/a, Deutsche Bank (Suisse) SA ("Deutsche Bank"), is and was at all material times a citizen of Switzerland with its principal place of business in Switzerland.

8. Defendant, Schroder & Co. AG ("Schroders"), is and was at all material times a citizen of Switzerland with its principal place of business in Switzerland.

9. Defendants, Deutsche Bank and Schroders, are sometimes referred to together as "the Swiss Banks."

2

## SUBJECT MATTER JURISDICTION

10.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between a citizen of a State and a citizen of a foreign state and a State as Plaintiffs, and citizens of a different State and of different foreign states as Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     The Court further has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all related claims which form part of the same case or controversy.

## PERSONAL JURISDICTION

### Carlos and Efrain Martinez:

12.     The Court has specific jurisdiction over the Martinez Defendants in that they committed tortious acts in this State within the meaning of Fla. Stat. § 48.193(1)(a) 2.

13.     The Court further has general jurisdiction over the Martinez Defendants because they are engaged in substantial and not isolated activity within this state within the meaning of Fla. Stat. § 48.193(2).

14.     The Martinez Defendants have minimum contacts with this State.

### Deutsche Bank:

15.     Deutsche Bank is a Swiss banking conglomerate that has a division named "Deutsche Bank Wealth Management," located in Miami, Florida, which acts as its agent to attract business for its operation in Switzerland, which Deutsche Bank markets through its website as being an integrated part of its globally connected wealth management operations, as follows:

(a)     "Deutsche Bank Wealth Management is one of the world's largest wealth managers and the valued partner of individuals, entrepreneurs, family offices and foundations. It is

3

part of Deutsche Bank's Private Bank, which has more than 600 billion euros in assets under management." See, https://wealth.db.com/en/what-we-do.html#

(b)     "Our worldwide presence enables us to combine wealth management capabilities with local understanding. This is why we provide an extensive range of services, plus the ability to tailor solutions based on your specific needs." See, https://wealth.db.com/en/locations/americas/miami.html.

(c)     "We specialize in complex and bespoke solutions for high net worth and ultra-high net worth clients across the US and the world. Deutsche Bank Relationship Managers are bankers of substance, with an average tenure of 15+ years in wealth management. Our combination of strong, established talent, global connectivity and capabilities across investment management, global wealth planning and trust, structured lending, liquidity management, and banking sets us apart from competing firms." See, https://wealth.db.com/en/locations/americas/miami.html

16.     Deutsche Bank states its business aim as being to be "The Global Hausbank" for its clients, namely: * "the home for all its clients' financial needs, wherever in the world they are and whatever their ambitions;" * "offer its clients the right combination of products and solutions to meet their needs;" * "leverage its global network and local expertise in 56 markets, enabling clients to navigate a changing world and seize opportunities; connect across all four of its business divisions – the Corporate Bank, Investment Bank, Private Bank and Asset Management – to consistently deliver the expertise of the entire bank to its clients." See, https://www.db.com/who-we-are/strategy/index?language_id=1 (All emphasis in the original).

17.     Deutsche Bank corresponds directly from Switzerland with attorneys, accountants, private bankers, and other professionals in Florida who are engaged in international, tax, estate

and wealth planning to attract investment into its Swiss-held bank accounts from their clients and, upon information and belief, thereby attracts billions of dollars a year into management.

18.     This case arises out of and exemplifies this pattern of business.

19.     The Department of Justice ("DOJ") website reflects longstanding business operations conducted by Deutsche Bank in Florida. In 2015, through an investigation arising out of this District, Deutsche Bank reached a $31 million resolution with the DOJ to avoid criminal prosecution, admitting to helping U.S. clients, including some with ties to Florida, to evade taxes through secret offshore accounts. As part of the DOJ's Swiss Bank Program, the bank agreed to pay the penalty and cooperate with ongoing tax evasion investigations. *See* https://www.justice.gov/archives/opa/pr/justice-department-announces-deutsche-bank-suisse-sa-reaches-resolution-under-swiss-bank.

20.     By reason of the matters alleged, the Court has specific jurisdiction over Deutsche Bank pursuant to Fla. Stat. § 48.193 (1)(a) in that it, personally or through an agent at all material times: (a) operated, conducted, engaged in or carried on a business in this State, and/or had an office or agency in this State, within the meaning of Fla. Stat. § 48.193(1)(a)(1); (b) committed a tortious act in this State within the meaning of Fla. Stat. § 48.193(1)(a)(2); and (c) breached a contract in this state by failing to perform acts required by the contract to be performed in this state within the meaning of Fla. Stat. § 48.193(1)(a)(7).

21.     By reason of the matters alleged, Deutsche Bank has continuous and systematic general business contacts with Florida which are extensive and pervasive. A significant portion of its wealth management business is derived from established commercial relationships in Florida such as to render it essentially at home in this State. Consequently, this Court has general jurisdiction over it within the meaning of  Florida Statute § 48.193(2).

22.     Deutsche Bank has minimum contacts with this State.

**Schroders:**

23.     Schroders is a Swiss banking conglomerate which has an affiliate located in Miami, Florida, named "Schroder Investment Management North America, Inc.," which acts as its agent to attract business for its wealth management operation in Switzerland, which affiliate Schroders, markets through its website as being an integrated part of the Defendant's globally connected operations, headquartered in Switzerland, as follows:

(a)     "We are a leading provider of active asset management, advisory and wealth management services. Recognized as a leader in sustainability. Few investment managers can match the combination of capabilities and global reach that we offer." See, https://www.schroders.com/en/global/individual/about-us/.

(b)     "£823.7 billion assets under management. 38 Locations around the world." See, https://www.schroders.com/en-ie/ie/individual/about-us/.

(c)     "We have over 200 years of expertise, and 5717 people based in 38 locations around the world." See, https://www.schroders.com/en/global/official-institutions/about-us/our-business/.

(d)     "At Schroders, we combine the capabilities of a leading global asset and wealth manager with the attitude of a family business with over 200 years of tradition and the quality of Swiss private banking." See, https://www.schroders.com/en-ch/ch/wealth-management/.

24.     The    website    content    is    represented    as    being: issued by "Schroder & Co Bank AG, regulated by FINMA, with its head office at Talstrasse 11,

6

8001 Zurich and a branch in Geneva." See, https://www.schroders.com/en-ch/ch/wealth-management/about-us/about-schroders-switzerland/.

25. Schroders corresponds directly from Switzerland with attorneys, accountants, private bankers, and other professionals in Florida engaged in international, tax, estate and wealth planning to attract investment into its Swiss-held bank accounts from their clients and, upon information and belief, thereby attracts billions of dollars a year into management.

26. The DOJ website further reflects longstanding business operations conducted by Schroders in Florida. In 2015, through an investigation out of this District, Schroders reached a $10.3 million resolution with the DOJ to avoid criminal prosecution, admitting to helping U.S. clients, including some with ties to Florida, to evade taxes through secret offshore accounts. As part of the DOJ's Swiss Bank Program, the bank agreed to pay the penalty and cooperate with ongoing tax evasion investigations. See, http://www.justice.gov/archives/opa/file/767021/dl?inline.

27. By reason of the matters alleged, the Court has specific jurisdiction over Schroders pursuant to Fla. Stat. § 48.193 (1)(a) in that it, personally or through an agent at all material times: (a) operated, conducted, engaged in or carried on a business in this State, and/or had an office or agency in this State, within the meaning of Fla. Stat. § 48.193(1)(a)(1); (b) committed a tortious act in this State within the meaning of Fla. Stat. § 48.193(1)(a)(2); and (c) breached a contract in this state by failing to perform acts required by the contract to be performed in this state within the meaning of Fla. Stat. § 48.193(1)(a)(7).

28. By reason of the matters alleged, Schroders has continuous and systematic general business contacts with Florida which are extensive and pervasive. A significant portion of its wealth management business is derived from established commercial relationships in Florida such

as to render it essentially at home in this State. Consequently, this Court has general jurisdiction over it within the meaning of Florida Statute § 48.193(2).

29.     Schroders has minimum contacts with this State.

## **VENUE**

30.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) in that at least one of the two Martinez Defendants resides in the district, and they are both residents of Florida; and pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated in this district.

## **FACTS**

31.     Amado Martinez Puentes ("Amado") was a citizen of Venezuela who is now deceased.

32.     During his life, Amado built a very successful transportation and logistics enterprise in Venezuela and created substantial wealth.

33.     As is more particularly described below; to dispose of his wealth after his death, Amado created a trust by which he disposed of his property outside Venezuela and a will by which he disposed of his property in Venezuela.

34.     Amado had four brothers with whom he was not on speaking terms and to whom he did not wish to bequeath any of his wealth. They were therefore not named as beneficiaries under either the trust or the will. Two of those brothers are the Defendants, Carlos and Efrain-Martinez.

**The Funds at Deutsche Bank are transferred to Inversiones.**

35.     On August 16, 2013, Amado had the Plaintiff company, Inversiones, established under the laws of Nevis. The membership interest in Inversiones was then held by Amicorp Trustees (New Zealand) ("Amicorp Trustees") as trustee of the Amicorp Trust of which Amado was the sole life beneficiary.

36.     At that time, Amado had assets in a personal account at Deutsche Bank in Geneva, Switzerland, which he wished to transfer to Inversiones, and he and his counsel in Miami, Florida, Shutts & Bowen, set about effecting the transfer of ownership.

37.     On September 26, 2013, Amado and Shutts & Bowen instructed Deutsche Bank to re-title Amado's assets from his personal name to the name of Inversiones.

38.     In a lengthy course of correspondence thereafter, between September 16, 2013 and September 30, 2015, Amado and Shutts & Bowen provided multiple documents in response to a series of requests from Deutsche Bank in which they affirmed to Deutsche Bank that the assets formerly owned by Amado personally were now legally owned by Inversiones; that the membership interest in Inversiones was held by Amicorp as trustee but that Amado was the sole ultimate beneficial owner; completed and transmitted requested account-opening forms; provided articles of organization for Inversiones, provided a membership registry for Inversiones, showing Amicorp as sole member and a certificate of good standing for Inversiones; provided written confirmation that Amado was the sole director of Inversiones, and that Amicorp Trustees was the sole legal owner of Inversiones; and provided additional documents requested by the bank.

39.     At the conclusion of this two-year exchange of correspondence, Deutsche Bank asked for no further information or the execution of any further documents which led all concerned to justifiably believe that the transfer of ownership had been duly effected.

**Amado's Last Will and Testament**

40.     On June 16, 2016, Amado executed his last will and testament in Venezuela in which he identified several individuals as his legatees to receive the shares in several Venezuelan companies, his yacht, real estate, and money in Venezuelan bank accounts.

41.     He intentionally did not leave any of his property to any of his four brothers.

**Amado's Personal Account at Schroders Bank**

42.     On July 12, 2016, Schroders sent confirmation of the opening of a new personal account for Amado. Tina Kasper, manager at Schroders, emailed Amado confirming that the "old account has been closed and all the assets have been transferred to the new account in your name."

**The Amado Martinez Trust**

43.     On June 29, 2017, Amado revoked the Amicorp Trust and the membership interest in Inversiones was assigned back to Amado, personally. The account at Deutsche Bank remained owned by Inversiones.

44.     On November 10, 2017, at the offices of his attorneys, Shutts & Bowen in Miami, Florida, by agreement with Trident Trust, as trustee: (a) Amado established the Amado Martinez Puentes Revocable Trust, ("Amado Martinez Trust"), under South Dakota law, with Trident as trustee [Exhibit "A"]; (b) Amado assigned to Trident, as such trustee, his membership and other interests in seven companies, including Inversiones [Exhibit "B" ] and all accounts in his personal name at the Swiss bank, Schroders. [Exhibit "B," para 1, (b)].

45.     That same day, November 10, 2017, Inversiones issued a membership certificate to Trident, as Trustee of the Amado Trust and the Register of Members for Inversiones was updated to reflect Trident, as trustee of the Amado Trust, as the legal owner of the membership interest in Inversiones.

46.     As a result of these transactions, Trident Trust, as trustee, became the legal owner of the membership interest in Inversiones on behalf of the trust beneficiaries as equitable owners, while Inversiones continued as legal owner of the account at Deutsche Bank in Switzerland.

47.     As a further result of these transactions, Trident Trust, as trustee, became the legal owner of all personal accounts at Schroders on behalf of the trust beneficiaries.

**Amado Martinez Dies**

48.     On August 23, 2018, Amado died in Venezuela, leaving no spouse or children.

49.     As of that date, the estimated funds at Deutsche Bank exceeded $12 million, and the estimated funds at Schroders exceeded $10 million. It is believed that the funds have been invested and increased substantially since then.

**Deutsche Bank Repudiates the Existence of any Accounts.**

50.     In the course of correspondence following Amado's death, Deutsche Bank claimed that it held no account in the name of Inversiones, or Amado, or any assets that were subject to the terms of Amado's will.

51.     Deutsche Bank further stated that it was unable to provide details of any relevant account documents to the joint executors of Amado's estate.

**Schroders Repudiates the Existence of any Accounts.**

52.     On October 2, 2018, Trident Trust provided Schroders with a certificate of trust and stated that it wanted the bank to pursue the most conservative investment approach possible to preserve the trust assets.

53.     Schroders, however, refused to acknowledge the existence of any right of Trident to any funds at the bank or even to state whether or not Trident's assignor, Amado Martinez, had been a client of the bank.

**Trident sues the Swiss Banks in South Dakota.**

54.     Given Schroders' refusal to acknowledge any account owned by Trident Trust or provide any information regarding its position, on April 18, 2023, Trident Trust brought suit in South Dakota against Schroders for a declaratory judgment regarding ownership of funds held at that bank and secured a final order in its favor.

55.     On February 6, 2024, Trident Trust forwarded a copy of the order to Schroder requested that Schroders wire transfer to transfer all assets held in Amado's personal name to Trident Trust as Amado's assignee.

56.     On February 13, 2024, Schroders replied, refusing to transfer the funds on the claimed basis that to comply with a foreign court order would be a criminal act in Switzerland. It directed Trident to proceed by filing an action for Exequatur in Switzerland to domesticate the order and refused to state, one way or the other, whether or not Amado had been a client.

57.     This was obvious prevarication. If Schroders believed Amado Martinez to have been a client and Trident Trust to be its assignee it could have voluntarily transferred the funds without compulsion by any court order.

58.     In order to obviate any argument on the effectiveness of the final order, Trident decided to recommence its action against Schroders in South Dakota by means of an amended pleading and fresh service of process.

59.     Given Deutsche Bank's similar refusal to acknowledge even the existence of any accounts or provide any information supporting their position, on January 15, 2025, Trident Trust brought suit in South Dakota against Deutsche Bank for a declaratory judgment regarding ownership of the funds owned by Inversiones and held at that bank.

12

60. Both Swiss Banks defended against suit in South Dakota based on a claimed lack of personal jurisdiction over them in that State.

**Wrongful Release of Assets at Deutsche Bank to the Martinez Defendants.**

61. On October 7, 2025, Trident Trust and Inversiones received information for the first time that Deutsche Bank may have wrongly released the assets that it held for Inversiones to the Martinez Defendants.

62. Upon demand for an answer, Deutsche Bank refused to state whether or not it had released the assets.

63. On the basis of the behavior of Deutsche Bank and all the information presently known to it, Plaintiff, Inversiones, therefore believes that Deutsche Bank has wrongfully released the funds and affirmatively alleges that Deutsche Bank has, in fact, wrongfully released its assets to the Martinez Defendants at some unknown time.

64. Plaintiff, Inversiones, does not know before discovery what representations the Martinez Defendants may have made to Deutsche Bank to induce it to release the funds to them, but believes that it may have been upon their wrongful assertion to Deutsche Bank that they were Amado's heirs under Venezuelan intestacy law and that he had died intestate as to such assets.

65. This contention would be legally untenable since the assets had been transferred several years before into the ownership of Inversiones. Any release of funds would therefore have been contrary to law.

**Schroders Wrongful Refusal to Release Plaintiff's Assets.**

66. Trident Trust presently has no information that Schroders has released the assets which it holds and believes that they remain at the bank, but that bank is wrongfully refusing to release the funds to the Plaintiff.

67.     Given the situation with regard to Deutsche Bank, it is believed, before discovery, that Schroders is refusing to release the assets to their rightful legal owner, Trident Trust, because of the Martinez Defendants' wrongful assertion to Schroders to some competing entitlement to the same, such as that they were their brother, Amado's, heirs under Venezuelan intestacy law and that he had died intestate as to such assets.

68.     This contention would be legally untenable since the ownership of the assets had been conveyed by Amado to his trustee, in trust, before his death, Schroders' refusal to release funds to Trident Trust, as trustee, is therefore contrary to law.

## Attorney's Fees

69.     Plaintiff has retained the undersigned attorneys and is obliged to pay them a reasonable fee.

70.     All allegations made in the Counts below are made in the alternative.

## COUNT I

## Declaratory and Other Relief – Ownership of the Funds at Deutsche Bank

Plaintiffs, Inversiones and Trident Trust, realleges paragraphs 1 through 70 against Defendants, Efrain Martinez, Carlos Martinez and Deutsche Bank, and further allege as follows:

71.     For the foregoing reasons, there is a present, actual dispute between Inversiones and the Martinez Defendants as to the ownership of the funds that are or were held at Deutsche Bank, which have, upon information and belief, been released to the Martinez Defendants.

72.     For the foregoing reasons, as the legal owner of the shares in Inversiones and as a fiduciary to the equitable owners of the assets of Inversiones, namely the beneficiaries of the Amado Trust, Trident Trust (a) has interests that will be affected by the result of this claim and (b) is a required party in the event that the Court requires the reformation of documents or other

administrative action on its part as the sole managing member of Inversions to perfect the claim, and therefore joins in it as an additional Plaintiff.

73.     Deutsche Bank is a proper though not indispensable party to this claim and is therefore joined as a Defendant.

WHEREFORE, Plaintiffs seek an order declaring that Inversiones is and was the owner of the funds that are at Deutsche Bank or, as the evidence may show, have been wrongly released to the Martinez Defendants from Deutsche Bank; that any funds wrongly received by the Martinez Defendants and any proceeds traceable thereto be impressed with a constructive trust in favor of Inversiones; that the Martinez Defendants be compelled by way of mandatory injunction to return the amount taken, plus interest, to the Plaintiff; and that Plaintiff further recover the attorney's fees and costs of this action on all grounds as may be available under law or in equity, together with all further or other relief.

## COUNT II

### Declaratory and Other Relief – Ownership of the Funds at Schroders

Plaintiff, Trident Trust, realleges paragraphs 1 through 70 against Defendants, Efrain Martinez, Carlos Martinez and Schroders, and further alleges as follows:

74.     For the foregoing reasons, there is a present, actual dispute between Trident Trust and the Martinez Defendants as to the ownership of the funds that are being held at Schroders.

75.     Schroders is a proper though not indispensable party to this claim.

WHEREFORE, Plaintiff, Trident Trust, seeks an order declaring that it is the owner of the funds being held at Schroders and that it recover the attorney's fees and costs of this action on all grounds as may be available under law or in equity, together with all further or other relief.

15

## COUNT III

### Tortious Interference with Deposit Contract between Inversiones and Deutsche Bank

Plaintiff, Inversiones, realleges paragraphs 1 through 70 against Defendants, Efrain Martinez and Carlos Martinez and further alleges as follows:

76.    Inversiones was a party to a valid, enforceable deposit contract with Deutsche Bank whereby the bank was to hold the funds for the benefit of its depositor and not to release any such funds without the valid authorization of the depositor.

77.    Efrain and Carlos Martinez knew of the existence of a deposit contract between their brother, Amado, or one of his entities, at Deutsche Bank.

78.    Efrain and Carlos Martinez nevertheless intentionally and unjustifiably induced a breach of that deposit contract by making misrepresentations to Deutsche Bank, the nature of which is unknown before discovery, that they had a higher claim to the funds on deposit.

79.    As a result of their misrepresentations, Deutsche Bank was induced to repudiate and breach its contract and release the funds on deposit to the Martinez Defendants, proximately causing damage to the Plaintiff, Inversiones.

WHEREFORE, Plaintiff, Inversiones, demands against the Martinez Defendants damages in the amount of the sums taken, plus interest; that the funds taken and any proceeds traceable thereto be impressed with a constructive trust in favor of Inversiones; that the Martinez Defendants be compelled by way of mandatory injunction to return the amount taken, plus interest, to the Plaintiff; and that Plaintiff further recover the attorney's fees and costs of this action on all grounds as may be available under law or in equity, together with all further or other relief.

## COUNT IV

### Tortious Interference with Deposit Contract between Amado Martinez and Schroders

Plaintiff, Trident Trust, realleges paragraphs 1 through 70 against Defendants, Efrain Martinez and Carlos Martinez and further alleges as follows:

80.     Amado Martinez was a party to a valid, enforceable deposit contract with Schroders whereby the bank was to hold the funds for the benefit of its depositor and not to release any such funds without the valid authorization of the depositor.

81.     During his life, Amado assigned his interest in the account at Schroders to his trustee, Trident Trust, which therefore stands in his shoes.

82.     Efrain and Carlos Martinez knew of the existence of a deposit contract between their brother, Amado, and Schroders.

83.     Efrain and Carlos Martinez have nevertheless intentionally and unjustifiably induced a breach of the deposit contract by making misrepresentations to Schroders, the nature of which is unknown before discovery, that they have a higher claim to the funds on deposit, creating doubt as to ownership.

84.     As a result of their misrepresentations, Schroders has been induced to repudiate and breach its deposit contract by refusing to release the funds on deposit to their true owner, Trident Trust, as trustee, thereby proximately causing damage to the Plaintiff, Trident Trust.

WHEREFORE, Plaintiff, Trident Trust, demands against the Martinez Defendants damages in the amount of the sums being withheld by Schroders, plus interest, and that Plaintiff recover the attorney's fees and costs of this action on all grounds as may be available under law or in equity, together with all further or other relief.

## COUNT V

### Conversion – Martinez Defendants – Specific Funds at Deutsche Bank

Plaintiff, Inversiones, realleges paragraphs 1 through 70 against Defendants, Efrain Martinez and Carlos Martinez and further alleges as follows:

85.     By reason of the matters alleged, the Martinez Defendants have exercised dominion over the property of the Plaintiff, Inversiones, which were specific funds invested in a segregated account at Deutsche Bank to which it had the higher right of immediate possession and thereby wrongfully deprived the Plaintiff of its property.

WHEREFORE, Plaintiff, Inversiones, demands against the Martinez Defendants damages in the amount converted plus interest, and that Plaintiff recover the attorney's fees and costs of this action on all grounds as may be available under law or in equity, together with all further or other relief.

## COUNT VI

### Conversion – Deutsche Bank - Specific Funds at Deutsche Bank

Plaintiff, Inversiones, realleges paragraphs 1 through 70 against Defendant, Deutsche Bank, and further alleges as follows:

86.     By reason of the matters alleged, Deutsche Bank has exercised dominion over the property of the Plaintiff, Inversiones, which were specific funds invested in a segregated account at Deutsche Bank to which the Plaintiff had the higher right of immediate possession and thereby wrongfully deprived the Plaintiff of its property.

WHEREFORE, Plaintiff, Inversiones, demands against Defendant, Deutsche Bank, damages in the amount converted plus interest, and that Plaintiff recover the attorney's fees and costs

18

of this action on all grounds as may be available under law or in equity, together with all further or other relief.

## COUNT VII

### Conversion – Martinez Defendants – Specific Funds at Schroders

Plaintiff, Trident Trust, realleges paragraphs 1 through 70 against Defendants, Efrain Martinez and Carlos Martinez and further alleges as follows:

87. By reason of the matters alleged, the Martinez Defendants have exercised dominion over the property of the Plaintiff, Trident Trust, which were specific funds invested in a segregated account at Schroders to which the Plaintiff had the higher right of immediate possession and thereby wrongfully deprived the Plaintiff of its property.

WHEREFORE, Plaintiff, Trident Trust, demands against the Martinez Defendants damages in the amount converted plus interest, and that Plaintiff recover the attorney's fees and costs of this action on all grounds as may be available under law or in equity, together with all further or other relief.

## COUNT VIII

### Conversion – Schroders – Specific Funds at Schroders

Plaintiff, Trident Trust, realleges paragraphs 1 through 70 against Defendant, Schroders, and further alleges as follows:

88. By reason of the matters alleged, Schroders has exercised dominion over the property of the Plaintiff, Trident Trust, which were specific funds invested in a segregated account at Schroders to which the Plaintiff had the higher right of immediate possession and thereby wrongfully deprived the Plaintiff of its property.

WHEREFORE, Plaintiff, Trident Trust, demands against Defendant, Schroders, damages in the amount converted plus interest, and that Plaintiff recover the attorney's fees and costs of this action on all grounds as may be available under law or in equity, together with all further or other relief.

## COUNT IX

### Repudiation of Contract - Deutsche Bank

Plaintiff, Inversiones, realleges paragraphs 1 through 70 against Defendant, Deutsche Bank, and further alleges as follows:

89.     Deutsche Bank was under a duty to make no disposition of any funds held for Inversiones unless authorized by its depositor, regardless of from whom or from where in the world it might receive such contrary instructions, necessarily including Florida.

90.     By reason of the matters alleged, Deutsche Bank has breached its deposit contract with Inversiones in Florida by wrongfully paying out funds owned by Inversiones to the Martinez Defendants in Florida pursuant to their wrongful instructions.

91.     Deutsche Bank has further repudiated the existence of any deposit contract and claims that none such exists.

92.     Plaintiff elects to accept the repudiation and hereby sues for the damages caused.

WHEREFORE, Plaintiff, Inversiones, demands against Defendant, Deutsche Bank, damages plus interest, and that Plaintiff recover the attorney's fees and costs of this action on all grounds as may be available under law or in equity, together with all further or other relief.

## COUNT X

### Repudiation of Contract - Schroders

Plaintiff, Trident Trust, realleges paragraphs 1 through 70 against Defendant, Schroders, and further alleges as follows:

93.     Schroders Bank was under a duty to obey no instructions for the disposition of any funds held for its depositor, Amado Marinez, unless authorized by its depositor, regardless of from whom or from where in the world it might receive such contrary instructions, necessarily including Florida.

94.     By reason of the matters alleged, Schroders has breached its deposit contract with its depositor, Amado Martinez, and by extension with his assignee, Trident Trust, by wrongfully responding to contrary instructions regarding the funds from the Martinez Defendants in Florida, thereby preventing their payment to the Plaintiff.

95.     Schroders, by its behavior, has repudiated the existence of any deposit contract with the Plaintiff's assignor, Amado Martinez.

96.     Plaintiff elects to accept the repudiation and hereby sues for the damages caused.

WHEREFORE, Plaintiff, Trident Trust, demands against Defendant, Schroders, damages plus interest, and that Plaintiff recover the attorney's fees and costs of this action on all grounds as may be available under law or in equity, together with all further or other relief.

## COUNT XI

### Unjust Enrichment – Martinez Defendants and Deutsche Bank

Plaintiff, Inversiones and Trident Trust, reallege paragraphs 1 through 70 against Defendants, Efrain Martinez, Carlos Martinez and Deutsche Bank and further alleges as follows:

21

97. Amado Martinez deposited in excess of $12 million at Deutsche Bank, which was the product of his business efforts.

98. Deutsche Bank invested such funds on his behalf and earned commissions and fees for doing so.

99. Amado Martinez set up the company, Inversiones, to be the vehicle to hold such funds, with his trustee, Trident Trust, holding the membership interest in that company, so that upon his death his trustee might distribute the funds held at Deutsche Bank in the name of Inversiones to his chosen beneficiaries, which did not include his brothers, the Martinez Defendants.

100. Amado Martinez and his attorneys in Florida had a protracted course of correspondence between 2013 and 2015 in which Deutsche Bank asked for multiple documents confirming the nature of the transfer, which Amado wished to effect from his own name into the name of Inversiones.

101. The last request from Deutsche Bank was on September 28, 2015, and was answered on October 7, 2015. Deutsche Bank thereafter requested no further information or documents before Amado's death on August 28, 2018.

102. Accordingly, based on the correspondence with Deutsche Bank, the reasonable belief of Amado, Inversiones, and Trident Trust, was that the transfer had been made on the books at Deutsche Bank.

103. If there was any defect in the documents effecting the transfer which their client had requested, Deutsche Bank had a duty to tell their client and by failing to speak led Amado Martinez and the Plaintiffs to reasonably rely on its silence as confirmation that ownership had been transferred.

104. Had there been any defect in the information required to make the transfer, and none such is known, it could not have been more than an administrative matter which Trident and/or Inversiones could readily have satisfied even after Amado's passing.

105. Following Amado's death, however, as is alleged in detail above, mystifyingly, Deutsche Bank refused to acknowledge the existence of any account at the bank, whether personal or in a company name, and refused to share any information clarifying the situation.

106. Finally, on October 27, 2025, Plaintiffs learned that Deutsche Bank had wrongfully paid out the funds to the Martinez Defendants. Plaintiffs believe that the reason why Deutsche Bank had been so cagey is because it had subsequently realized its mistake.

107. The release of funds in these circumstances was against the bank's duty to its depositor. It was also a breach of the bank's most elementary standard of care when facing conflicting ownership claims and the possibility of having to pay out twice if it paid the wrong claimant. Deutsche Bank did not interplead the funds or even engage in discussions with the rival claimants, but paid the funds out, unilaterally, to the wrong claimant, without giving notice to its depositor.

108. As a consequence of its behavior, Deutsche Bank is equitably estopped from contending that it has disposed of the funds and should be treated in equity as if it still holds the funds.

109. For their part, the Martinez Defendants have wrongfully received millions of dollars to which they were not entitled, without supplying anything of value, as the result of a negligent or intentional wrongful act by Deutsche Bank.

110. These were funds which Amado had no wish to give to his brothers and for whom he had designated beneficiaries who would be cheated of such funds if the transfer is allowed to stand.

111.    Accordingly, the Martinez Defendants have been unjustly enriched by the amount transferred to them by Deutsche Bank and it would be against equity and good conscience to allow them to retain the funds which were gratuitously and wrongfully transferred to them.

112.    The funds were or should have been held in the name of Inversiones, which is or should be the only necessary Plaintiff to this claim. However, Trident Trust, which is the sole and managing member of Inversiones, and the party charged with the distribution of funds in the name of Inversiones to the trust beneficiaries, joins as a Plaintiff in the event it is required to supply any information for reformation of bank records or is otherwise deemed a necessary or proper party to this claim for the Court to grant complete relief.

WHEREFORE, Plaintiffs, Inversiones and Trident Trust request an order from the Court that the Martinez Defendants and Deutsche Bank are jointly and severally liable to repay the said funds, plus interest, to the Plaintiffs and that the Plaintiffs recover the attorney's fees and costs of this action on all grounds as may be available under law or in equity, together with all further or other relief.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as of right and requests an advisory jury on all issues triable in equity.

Dated: April 30, 2026

Respectfully submitted,

Aballí Milne Kalil, P.A.
*Counsel for Plaintiffs*
One Southeast Third Avenue, Suite 2250
Miami, Florida 33131
Telephone: (305) 373-6600
Facsimile: (305) 373-7929

25

Email: hmilne@aballi.com
Email: jpoyer@aballi.com
Email: igucovschi@aballi.com

*/s/  Hendrik G. Milne*
Hendrik G. Milne, Esq.
Florida Bar No. 335886